## BASS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12596.

United States Court of Appeals
Fifth Circuit.

June 3, 1949.

---

[6] Nos. 9207, 9208, decided by this court on February 8, 1949.

[7] At No. 9723 decided by this court this day.

S. B. Lippitt, Albany, Ga., for petitioner.

Robert M. Weston, Ellis N. Slack, Robert N. Anderson, Louise Foster, Spl. Assts. to Atty. Genl., Washington, D. C., Theron Lamar Caudle, Asst. Attorney General, Charles Oliphant, Chief Counsel, Bur. Int. Rev., John M. Morawski, Spl. Atty., Bur. Int. Rev., Washington, D. C., for respondent.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

Bass during the year 1941 owned in partnership with Cates a business known as Albany Amusement Company, which had and used a large number of coin operated music boxes, a truck and other equipment, besides rental property and lands, the total assets on the books being some $128,357. On June 1 of that year they sold to one Cannon for $35,000 the music boxes, truck and some other equipment, taking one hundred notes for $350 each, payable on the 1st and 15th of each month and secured by a Georgia bill of sale covering the property so sold. On December 8, 1941, Bass and Cates entered into a writing by which, reciting that Bass desired to sell and Cates desired to buy the interest of Bass in the partnership, including trade name and good will, excepting named real estate and his interest in certain personal property, Bass agreed to sell and Cates agreed to purchase, the price to be the assumption by Cates of all partnership debts owed on Dec. 31, 1941, and payment of the actual book value of the interest purchased as shown by the books to be audited as of date Dec. 31, 1941. In making the audit and stating the current assets the item "Notes Receivable", where the notes of Cannon belonged, was left blank, and the item of equipment, $76,924, still included the music boxes and truck sold to Cannon. This was explained as due to the belief that Cannon would not be

able to pay his notes and that the music boxes and truck, the only security, would have to be taken back. Cannon did pay his notes falling due in 1941, amounting to $4,900, and did pay the other notes substantially as they fell due. The $4,900 so paid was duly accounted for. The remaining notes, $30,100, outstanding on Dec. 31, are the subject of contention.

The Commissioner held that they were worth their face when acquired by the partnership, and that a gain was realized in the sale of the music boxes and truck over their cost basis, and that each partner owed additional tax for his half of the gain, the deficiency assessed to Bass being $4,918. Before the Tax Court Bass contested this valuation of the notes, and by amendment he claimed that he had in the tax year lost his half-interest in the gain in selling the notes to Cates. The Tax Court upheld the Commissioner's valuation of the notes, and denied to Bass any deduction for loss in selling to Cates, because Bass had not in the sale to Cates included his interest in all the partnership property; and until all should be ultimately disposed of it could not be known whether gain or loss resulted.

■ 1. As to the fair value of the Cannon notes in June, 1941, the Tax Court's finding that, so far as was proved, they were worth their face as held by the Commissioner, is not clearly erroneous and is sustained. Certain it is that they turned out to be good. The partnership realized a gain in selling the music boxes and truck therefor.

■ 2. We think it clear that Bass lost his half of that gain in selling his interest during the tax year to Cates. Bass and Cates figured the sale price as though the partnership owned no notes and did own the music boxes and truck, which was not the fact. Bass sold his interest in the notes, secured by the music boxes and truck, for he sold his interest in all the partnership assets save those specially reserved. The final evidence of sale dated Jan. 1, 1942, expressly says that Bass "In consideration of $5,000 cash and $24,690 secured by notes * * * has bargained, sold and conveyed * * * all his right

and title, equity and interest in and to the partnership business and partnership assets, including * * * all of the personal property and chattels belonging to said business, including real estate, leases, notes, accounts, mortgages and other forms of indebtedness payable to the Albany Amusement Company, except" the property reserved in the agreement of Dec. 8. Cannon's notes were payable to Albany Amusement Company and Bass sold his interest in them; but he got for them only the book value of the music boxes and truck sold to Cannon instead of the face of the notes. The Commissioner having successfully contended that they were worth their face in June, 1941, and held Bass to account for the gain on that basis, is in no position to deny they had that basis when Bass sold a half-interest in them in the same tax year to Cates. If Bass realized a taxable gain in acquiring them in June he lost it in selling them in December. He was not made any richer by having owned a half-interest in the notes.

■ 3. The Tax Court seems to have held that no deductible loss was sustained in 1941 because the reserved property was not yet disposed of. We think this does not follow. The reserved land and personal property ceased to be partnership property, and Bass and Cates became simply joint owners of it, as is expressly stated in the agreement. When disposed of this property will have its own cost basis and gain or loss realized. It is not a part of the sale transaction of Dec. 8, 1941, between Bass and Cates.

■ The Commissioner in his brief here contends that the sale did not occur in 1941, but after Jan. 1, 1942. It is true that the exact amount to be paid was not fixed and paid in 1941, but the written agreement of Dec. 8, 1941, was a valid one, and enforcible. The testimony of Bass is that Cates was to take over Dec. 31, 1941, and that Bass was not "instrumental in carrying on business after December 8", but got his part of the profits through December. He had no connection with the business after the 31st day of December. This is not disputed. We think the sale was effective December 31, in 1941. The later given bill of sale was not necessary, and

the figuring of the purchase price was a consequence of the sale. Delay as to these did not delay the real effect of the sale.

■ The Commissioner also urges that the evidence does not establish the cost basis of what was sold to Cates so as to prove the amount of the loss. The auditor's testimony is that the book account item of equipment, $76,924, was the unrecovered cost, that is, cost less reserve for depreciation, and $7,800 of it was the equipment sold to Cannon. The Commissioner must have established a cost basis for this equipment when he fixed the profit in the sale by the partnership to Cannon, though his basis does not appear in the record. There was no controversy about the correctness of the books in the trial before the Tax Court. If there is any real dispute about what Bass got for his half of the Cannon notes, additional evidence ought to clear it up. It seems plain to us that Bass had a loss, and that it ought to be ascertained and deducted.

The judgment is reversed with direction to redetermine the tax according to the views herein expressed, with such additional evidence as is needed.

Reversed.